UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| F.M. Machine Co. | ) | Case No. 5:08CV2358 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | |
| | ) | [Resolving Doc. #28] |
| R&L Carriers, Inc., | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendant. | ) | |

This matter is before the Court upon a motion for partial summary judgment filed by Defendant R&L Carriers, Inc. ("R&L"). For the reasons stated herein, R&L's motion is GRANTED.

**I.  Facts**

Plaintiff F.M. Machine Co. ("F.M. Machine") has used R&L as its carrier for electrical panels for more than a decade. During this period of time, F.M. Machine used its own bills of lading rather than bills prepared by R&L. On May 23, 2008, F.M. Machine again shipped electrical panels with R&L using its own bill of lading. The panels were in good condition when they left F.M. Machine's possession. However, when the panels arrived at their destination five days later, they were found to be badly damaged and two of the four boxes were missing. As a result, F.M. Machine submitted a claim for the damage in the amount of $56,200. R&L, however, claims that the limitation of liability in the bill of lading is applicable and that F.M. Machine's damages are limited to $18,000. The applicability of the limitation of liability is the sole issue before this Court in the motion for partial summary judgment.

1

## II.     Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden of proving the absence of any "genuine issues" is borne by the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determining whether a factual issue is "genuine" requires considering the applicable evidentiary burdens. *Id.* at 252. Moreover, when deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushito Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party. The non-moving party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). Moreover, Fed. R. Civ. P. 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must— by affidavits or as otherwise provided in this rule—set our specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Accordingly, summary judgment analysis examines whether a trial is necessary and judgment is therefore appropriate when there are no genuine issues of material fact. *Anderson*, 477 U.S. at 250.

### III. Legal Analysis

In opposition to the motion for partial summary judgment, F.M. Machine relies heavily on *Toledo Ticket Co. v. Roadway Express, Inc.*, 133 F.3d 439 (6th Cir. 1998). The Court in *Toledo Ticket* first noted the standard applied when a carrier attempts to limit its liability under the Carmack Amendment.

> For a carrier to limit its liability pursuant to § 10730, it must satisfy four requirements. The carrier must: (1) maintain approved tariff rates with the ICC; (2) give the shipper a fair opportunity to choose between two or more levels of liability; (3) obtain the shipper's written agreement as to his choice of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

*Id.* at 442. Following the passage of the ICCTA, however, it is clear that the first requirement is no longer relevant to the Court's analysis as the ICC no longer exists.

*Toledo Ticket* went on to explain the requirements of giving the shipper a fair opportunity by noting as follows:

> With regard to the second requirement, the Supreme Court has noted that only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained. Affording a shipper a fair opportunity to choose between levels of liability means that a carrier must provide the shipper with both reasonable notice of any options that would limit the liability of the carrier and the opportunity to obtain the information about those options that will enable the shipper to make a deliberate and well-informed choice. In other words, a carrier seeking to limit its liability must bring this fact to the attention of the shipper, and the shipper must be given the choice to contract either with the limitation or without it. And, since it is the carrier that is seeking to limit its statutory liability, any ambiguity in the language the carrier selects in an effort to satisfy this second requirement must be construed against it. Furthermore, the burden of establishing that this requirement (as well as the other three) has been satisfied rests with the carrier.

3

*Id.* (citations and quotation omitted).  F.M. Machine contends that *Toledo Ticket* should be the beginning and the end of this Court's analysis.  The Court cannot agree.

*Toledo Ticket* did not resolve the issue of whether the "fair opportunity" standard was met when a shipper actually prepared the bill of lading that contained the limitation of liability clause at issue.  F.M. Machine, however, asserts that *Toledo Ticket* is protective of shippers and that therefore the Sixth Circuit would continue this position by expanding *Toledo Ticket* to include shipper-drafted bills of lading.  The Court disagrees.

In reaching its conclusion, the *Toledo Ticket* Court noted that "in order to provide the shipper with the reasonable notice that will permit the carrier to limit its liability, we believe the carrier must bring to the attention of the shipper its option to choose between levels of liability, whether or not the shipper is 'sophisticated.'"  *Id.* at 443.  In arguing for the expansion of *Toledo Ticket*, F.M. Machine ignores the underlying policy that supported the case's holding.

The rationale supporting *Toledo Ticket* and similar cases was to "protect shippers from carriers who would take advantage of their own superior knowledge and leverage when dealing with unwary shippers."  *Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1271 (11th Cir. 2001).  In a similar vein, courts have been "reluctant to give effect to limiting clauses with which a carrier could shield itself from liability through manipulation or fine print clauses contained in standardized contract forms."  *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 703 (11th Cir. 1986) (quotation omitted).

The rationale supporting *Toledo Ticket* is missing when examining a case in which the shipper has drafted the bill of lading.  There is no danger that a carrier will take advantage of a less-sophisticated shipper or that a limitation of liability will be buried in a standardized form.

Rather, logic would dictate that if F.M. Machine drafted the bill of lading at issue, it is familiar with the terms contained therein.

> This Court has found other cases wherein the shipper drafted the bill of lading. *See e.g. Mech. Tech. Inc. v. Ryder Truck Lines, Inc.*, 776 F.2d 1085 (2nd Cir. 1985); *Hughes Aircraft Co. v. N. Am. Van Lines Inc.*, 970 F.2d 609 (9th Cir. 1992); A*m. Cyanamid Co. v. New Penn Motor Express, Inc.*, 979 F.2d 310 (3rd Cir. 1992). In each of these cases the courts limited the carrier's liability, in part because the shipper drafted the bill of lading. *Mech. Tech. Inc.*, 776 F.2d at 1087 ("Having had the opportunity on its own form to secure greater protection, [the shipper] 'cannot complain about the consequences of leaving the applicable spaces blank ....'" q*uoting W.C. Smith, Inc. v. Yellow Freight Sys., Inc.*, 596 F.Supp. 515, 517 (E.D.Pa. 1983)); *Hughes Aircraft*, 970 F.2d at 612 ("Here, Hughes had such reasonable notice and an opportunity to make a deliberate, thoughtful choice in selecting North American's liability limit because it drafted the contract and directly negotiated its terms. The party responsible for drafting the contract is ordinarily charged with knowledge of its terms and meaning."); *Am. Cyanamid*, 979 F.2d at 314 ("The released value was specified on [the shipper's] own form of bill of lading and, in these circumstances, it seems fair to hold it to the terms it established.").

*Siren*, 249 F.3d at 1272.  Under these circumstances, the Court agrees that it is "not proper or necessary to protect shippers from themselves." *Id.* at 1271.  Similar to the shipper in *Siren*, F.M. Machine has failed to distinguish cases in which a shipper rather than a carrier drafted the bill of lading.  This failure to distinguish is fatal to F.M. Machine's argument.

Upon reviewing all the relevant case law, the Court finds *Siren*'s rationale to be persuasive under the facts presented.  "Where the shipper drafted the bill of lading and incorporated industry-specific terminology which… indisputably includes a limitation of liability" the reasonable opportunity prong of *Toledo Ticket* has been satisfied.  *See id.* at 1272.  To hold otherwise would require R&L to explain to F.M. Machine the meaning of the very terms that F.M. Machine had included in the bill of lading.  The Court declines to require such an act by a carrier.

Moreover, to the extent that F.M. Machine contends that it had no actual knowledge of the contents of R&L's tariff, the Court finds no merit in this argument.  F.M. Machine chose to incorporate R&L's tariff into the bill of lading.  Having voluntarily made that choice, F.M. Machine is charged with constructive knowledge of the contents of that tariff.

There are no other issues in dispute for the purposes of this motion.  Having found that the limitation of liability is properly a part of the parties' agreement, R&L's liability in this matter is limited to $18,000.

**IV.     Conclusion**

Based upon the reasons stated herein, R&L's motion for partial summary judgment is GRANTED.  The limitation of liability in the bill of lading is applicable to the shipment at issue.

IT IS SO ORDERED.


 June 16, 2009                                    __/s/ John R. Adams_____
Date                                                      JOHN R. ADAMS
                                                          UNITED STATES DISTRICT JUDGE

6